UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,               )
                                        )
                    Plaintiff,          )    No. 2:14-CR-00058-JLQ
                                        )
    vs.                                 )    MEMORANDUM OPINION AND
                                        )    ORDER DENYING MOTION TO
ADAM LOREN HANKINS,                     )    SUPPRESS
                                        )
                    Defendant.          )
_____)

An evidentiary hearing on Defendant's Motion to Suppress (ECF No. 32) was held on May 16, 2014, and May 19, 2014. Defendant was present, in custody, and represented by appointed counsel **John Gregory Lockwood**. The Government was represented by Assistant United States Attorney **Matthew Duggan**. The court heard testimony from several witnesses, and argument of counsel. At the conclusion of the hearing, the court issued its oral decision denying the Motion. This Order memorializes and supplements the oral findings and conclusions of the court.

**I.  Introduction**

Defendant, Adam Loren Hankins ("Defendant"), was arrested based on a Criminal Complaint on March 3, 2014. The grand jury subsequently returned an Indictment (ECF No. 19) charging him with one count of felon in possession of an explosive device in violation of 18 U.S.C. § 841(c), 842(i)(1), and 844(a)(1), and one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841. Defendant has filed a Motion to Suppress (ECF No. 32) arguing that the initial seizure of his truck and the subsequent search were in violation of his constitutional rights. Defendant

ORDER - 1

1  contends there was not probable cause for the issuance of a search warrant for search of

2  the truck and an insufficient nexus between the truck and the bombing investigation.

3  The Government contends that the impound and inventory were proper, as the truck was

4  used in the commission of a felony.  The Government further argues there was probable

5  cause for the issuance of the July 31, 2013 federal search warrant that resulted from an

6  investigation of automobiles being blown up using explosive  materials and blasting

7  caps. The Government further argued that if probable cause was lacking, the officers

8  relied on the warrant in good faith and under United States v. Leon, 468 U.S. 897 (1984),

9  the evidence should not be suppressed.

10      **II.  Factual Findings and Conclusions**

11      On July 5, 2013, law enforcement agents executed a federal search warrant at the

12  residence of Robert Showers, located at 2128 E. Lacrosse Avenue, in Spokane,

13  Washington to look for explosives. (Northcutt Aff. ¶ 6).  Agents recovered 14 pounds

14  of a blasting agent, a blasting cap, and an empty box for electric blasting caps.  At the

15  execution of the search warrant on July 5, 2013, Ella Jean Claassen was present.  She

16  gave consent for agents to look at her cell phone.  One of the contacts in her phone was

17  for "Hardcore Adam". (Northcutt Aff. ¶ 12).  Defendant, Adam Hankins, is known by

18  law enforcement to go by the nickname "Hardcore".

19      On July 20, 2013, Defendant was stopped while driving his White Dodge Dakota

20  truck (hereafter "truck"), and arrested based on probable cause to believe he had been

21  involved in an incident on July 9, 2013, involving an assault/false imprisonment of an

22  individual who was attempting to repossess the truck.[1]  The truck was seized by law

23  enforcement, both as evidence of an alleged assault on the repossession man, and in

24

25      [1]There are inconsistencies in the record as to whether the arrest occurred on July 19th or

26  July 20th.  As both the police report (ECF No. 32-1) and Tow/Impound sheet (ECF No. 32-2)

27  state July 20th, the court concludes the correct date is July 20th.

28  ORDER - 2

order to obtain a search warrant for evidence of firearms and stolen property.

In the time period between July 20th and July 29, 2013, Robert Showers participated in jail house phone calls to Ms. Claassen that were recorded. Special Agent Northcutt, of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), reviewed these recorded phone calls. In some of the calls, Showers referred to "semi-precious stones" and asked Claassen if she had vacuumed them up. There is a reference that there should have been about 14 of "those stones" and Claassen told Hankins she got them out with tongs. (Northcutt Aff. ¶ 9). Based on these calls, agents obtained a second search warrant for the Showers' residence at 2128 E. Lacrosse, and that warrant was executed on July 30, 2013. Agents recovered six additional blasting caps. At the execution of this warrant, "Claassen corroborated the information provided by Showers' jail calls by confirming that Showers had instructed her to retrieve the blasting caps from a floor drain in the residence, and that she had retrieved them with tongs." (Northcutt Aff. ¶ 10). The fact that Claassen had corroborated this information was also confirmed by the testimony of ATF Senior Special Agent Christopher Todd Smith. (Transcript at ECF No. 48, hereafter "Tr." at p. 43, 53). Agent Smith testified that Claassen confirmed with him that "what was referred to as the semi-precious stones or jewels - - was the blasting caps". (Tr. at p. 53). Agent Smith further testified that Claassen "named off people that she guessed she thought might have explosives that had been at Robert Showers' residence and Mr. Hankins was in fact one of those people." (Tr. at p. 54).

On July 29, 2013, Agent Northcutt had listened to another jail house call from Showers to Claassen. In this call, Showers referenced "Hardcore", the rocks that Claassen had been vacuuming, and Showers stated: "Evidently his [rocks] are messed up too. They just found some. I have to go see what the hell's up with that...I have to go talk to Hardcore." (Northcutt Aff. ¶ 11). Agent Northcutt believed this reference to rocks was a reference to blasting caps.

ORDER - 3

Based on this information, Agent Northcutt applied for a federal search warrant. His affidavit in support, stated in part: "Your affiant believes it is probable, based on the aforementioned information, and Showers' reference to Hankins having "stones" (blasting caps) that "they just found", that blasting caps are located in the Dodge Dakota pickup truck Hankins was driving, and that was impounded by Spokane police." (Northcutt Aff. ¶ 15).

At the suppresion hearing the court heard testimony from several witnesses. Spokane Police Department Sergeant Kurt Vigesaa testified as to his role in the initial stop of Defendant's truck on July 20, 2013. He testified that he stopped the vehicle because he had been informed by Officer Gately about the July 9, 2013 incident involving Defendant and the alleged felonious assault on the repossession man. Vigesaa testified that at the time of the arrest he observed several backpacks and laptop computers in the cab of the truck. From his experience on the burglary task force, this caused him to suspect that the truck contained stolen property. Vigesaa's belief concerning stolen property was further informed by the fact that he seized three "Quest" cards from Defendant, which did not bear Defendant's name. He testified that Defendant denied consent to search, and he decided to have the vehicle impounded. He testified that a visual inventory of the vehicle was done from outside the truck at the time of seizure.

ATF Senior Special Agent Christopher Todd Smith testified to his work on the Monroe Street bombing case, which included involvement in the execution of the July 30, 2013 search warrant at the Showers' residence. He testified to his belief that "semi-precious stones" was code for blasting caps. He knew that Defendant went by the nickname "Hardcore". He had prepared two affidavits in support of a July 5th and July 30th search warrant at the Showers' residence, and those affidavits were incorporated into the Northcutt affidavit and presented to the Magistrate Judge. (See Northcutt Aff. ¶ 4). He testified that at the execution of the July 30th search warrant, he spoke with Claassen

ORDER - 4

and she corroborated some of the information from the recorded jail house calls. (Tr. at 43, 53-55).

Agent Northcutt similarly testified that he believed "stones" were blasting caps and that he knew Defendant to be "Hardcore".  He testified that the truck was not searched prior to the execution of the federal search warrant on July 31, 2013. (Tr. at p. 60).  He testified that prior to obtaining the search warrant, United States Marshal Hank Shafer had run a bomb detection dog around the truck, and that the dog had shown some interest but not alerted. (Tr. at p. 63).  He testified to his belief that there was probable cause for a search warrant.  He stated that the blasting cap was found, upon execution of the search warrant, in a small, green, plastic container in the bed of the pickup.

Spokane Police Department Senior Patrol Officer Jason Uberuaga assisted with the arrest of Defendant on July 20, 2013.  He completed the Tow/Impound sheet (ECF No. 32-2).  He wrote the following narrative description on the impound sheet: "Veh[icle] was involved in an assault on a repo man veh[icle] was towed for evidence of that and possible thefts/burglaries." He also checked a box indicating that the vehicle was impounded as "evidence".  He also conducted the inventory, which he described as a "generalized look".  He looked at the items in the bed of the truck, but did not open them, and his testimony was that he did not believe he opened the cab of the truck because he had written "doors locked" on the impound form.

Greg Thieschafer, a Detective with the Spokane Police Department, testified as to his involvement with the execution of the search warrant on July 31, 2013.  He assisted with searching the cab of the truck and testified that he found blank checks and credit cards that were not in the Defendant's name.  He also found methamphetamine.

Hank Shafer, with the United States Marshals Service, testified as to the involvement of a canine trained to sniff for explosives.  He testified that the canine went into the cab of the truck, and then the back of the truck.  He did not move or open objects during the canine search.  The canine did not alert on anything, but did show some

ORDER - 5

interest in the bed of the truck, where the container with the blasting cap was ultimately found.  Shafer testified that he reviewed the search warrant prior to conducting the search.

Defense counsel stated he intended to call the Defendant's wife, Glo Hankins, to testify. She is sometimes referred to in the record as Glo Cowin-Mitchell.  However, she was unavailable at the time he sought to call her.  Defense counsel made a proffer, which was largely consistent with the Declaration of Glo Hankins (ECF No. 35) filed on May 14, 2014.  Her proffered testimony was essentially that Defendant is careful with his tools, and that he usually kept the green plastic box containing tire repair materials under the passenger seat.  She therefore believed it would have been "uncharacteristic" for the green box to be in the bed of the truck.

The court makes the following findings and conclusions:

1) Sergeant Vigesaa stopped Hankins in his truck on July 20, 2013, based on probable cause to believe Hankins had been involved in the unlawful imprisonment/assault of the truck repossession man on July 9, 2013;

2) On July 20, 2013, Hankins was driving the same truck that was involved in the July 9, 2013 incident;

3) Vigesaa and Officer Uberuaga impounded the vehicle as evidence both because it was used in the commission of a felony, and because they believed it may contain firearms and/or stolen property;

4) Uberuaga conducted an inventory, which was not a search, but was rather just a generalized look at the items in the back of the truck, and the inventory did not describe any items in the cab of the truck, perhaps because the doors were locked;

5) The court does not find that Agents Northcutt or Smith made any false statements in the affidavits presented to the Magistrate Judge in support of the search warrant.  The court found the testimony of these witnesses to be credible;

6) The court finds there was no search of the truck prior to the execution of the

ORDER - 6

federal search warrant on July 31, 2013;

8) The court finds the search conducted by Shafer and the canine occurred after issuance of the federal search warrant. It appears there was a sweep around the outside of the vehicle with the canine prior to the issuance of the warrant, as described in paragraph 16 of the Northcutt affidavit. Shafer was not specifically asked about the prior sweep, but specifically testified that the search was conducted after the warrant was issued;

9) The court finds the evidence viewed as a whole provided a substantial basis for the Magistrate's finding of probable cause, as discussed further *infra*;

10) The court further finds, as discussed below, that the good faith exception of *United States v. Leon*, 468 U.S. 897, 926 (1984) applies, in that the warrant was clearly supported by at minimum a colorable argument for probable cause and the Agents reliance thereon was objectively reasonable.

### III.  Discussion

The questions presented were whether the initial seizure of the truck was proper, and whether the federal search warrant to search the vehicle for evidence of explosives was supported by probable cause.

### A.  Impound and Inventory

A vehicle may be lawfully impounded "as evidence of a crime, when the police have probable cause to believe the vehicle has been stolen or used in the commission of a felony offense." *State v. Tyler*, 177 Wash.2d 690, 696 (2013).  A noninvestigatory inventory search of a vehicle may be conducted in good faith after it is lawfully impounded. *Id.* at 701. The requirement of good faith "is a limitation that precludes an inventory search as a pretext for an investigatory search. *Id.*  Searches of locked trunks or locked containers are prohibited during an inventory search, absent manifest necessity. *Id*. at 708.

ORDER - 7

In <u>Tyler</u> the Washington Supreme Court rejected the suggestion from prior Washington state case law that if an owner of the vehicle was present, the owner must be asked for consent to an inventory search. <u>See for example</u> *State v. Williams*, 102 Wash.2d 733 (1984) and *State v. White*, 135 Wash.2d 761 (1998). <u>Tyler</u> repudiates these prior statements as dicta, and clearly holds, "law enforcement officers do not have to obtain consent in order to conduct an inventory search of a lawfully impounded vehicle." *Id*. at 694.

The initial seizure of the truck was proper, because the vehicle was used in the commission of a felony (the unlawful imprisonment/assault of the repossession man on July 9, 2013). Both Sergeant Vigesaa and Patrol Officer Uberuaga were aware at the time of Hankins' arrest that Hankins was involved in the assault on July 9, 2013. Officer Uberuaga indicated on the Impound sheet, which was completed contemporaneously at the time of arrest, that the vehicle was impounded as evidence of the assault on the repossession man and for evidence of possible stolen property. The seizure was proper, and the officers did not need Hankin's consent to conduct an inventory search. However, the officers' testimony was that the inventory was not a "search" but rather just a generalized look, which explains why neither the methamphetamine or the blasting cap was found at the time of the inventory.

## B. The Automobile Exception

The Government has not argued that the automobile exception to the warrant applies, and thus the court will not determine its applicability. "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938 (1996). In *Labron*, the Supreme Court rejected the argument that exigent circumstances must be present in order to conduct the search without a warrant. The Supreme Court explained that its prior cases established that a vehicle's ready mobility is "an exigency sufficient to excuse failure to obtain a search warrant once probable

ORDER - 8

cause to conduct the search is clear." Id. at 940.  The Supreme Court further stated that an individual has a "reduced expectation of privacy in an automobile, owing to its pervasive regulation." *Id.*

## C. Probable Cause for a Warrant

The probable cause standard "protects citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime, while giving fair leeway for enforcing the law in the community's protection." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003).  Probable cause is a "fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." *Id*. at 371.  It is a concept "incapable of precise definition" which depends on the "totality of the circumstances." *Id.*  "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt," and the "belief of guilt must be particularized with respect to the person to be searched or seized." *Id.*  A court may certainly consider criminal history in determining probable cause, but "criminal history alone cannot establish reasonable suspicion or probable cause." *Burrell v. McIlroy*, 464 F.3d 853, 858 n. 3 (9th Cir. 2006).

The relevant inquiry is whether probable cause existed for the federal search warrant that was issued on July 31, 2014.  As to the federal search warrant, "[t]he validity of a search warrant depends upon the sufficiency of what is found within the four corners of the underlying affidavit." *United States v. Taylor*, 716 F.2d 701, 705 (9th Cir. 1983).  "An affidavit is sufficient if it establishes probable cause; that is, if the stated facts would reasonably allow a magistrate to believe that the evidence will be found in the stated location." *Id.*

The review of a Magistrate's determination, "is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).  The court employs a "totality of the

ORDER - 9

circumstances analysis" to determining probable cause, and not a hypertechnical approach of judging bits and pieces of information in isolation. *Id.* at 732.

The court has reviewed the lengthy affidavits of Agents Northcutt and Smith that were before the Magistrate. Those affidavits laid out in detail an ongoing investigation into Robert Showers that had resulted in seizing various explosive materials. The affidavits described the relationship between Showers and Claassen, and that Claassen had "Hardcore Adam" as a contact in her cell phone. (Northcutt Aff. ¶ 12). The affidavits describe jailhouse calls occurring between July 22nd and July 29th between Showers and Claassen discussing "stones" that she needs to get out, or has vacuumed out, or used tongs to retrieve. (Northcutt Aff. ¶ 9). The affidavits explain how the agents learned that rocks or stones were code for blasting caps, and that they verified this when they executed a search warrant on July 30th, and "Claassen corroborated the information provided by Showers' jail calls by confirming that Showers had instructed her to retrieve the blasting caps from a floor drain in the residence, and that she had retrieved them with tongs." (Northcutt Aff. ¶ 10).

Northcutt's Affidavit also describes a July 29th call between Claassen and Showers that referenced the "rocks you were down there vacuuming up", and that Hardcore's are messed up too and had just been found. (*Id*. at ¶ 11). The Affidavit further described the investigation had shown Defendant and Showers were housed on the same floor at the Spokane County jail, and that on July 19, 2013 Hankin's vehicle had been impounded to apply for a search warrant. (*Id*. at ¶ 12-14). Agent Northcutt then stated his belief that the reference to "stones" (blasting caps) that "they just found" was a reference to Hankin's truck which had not yet been searched. (*Id*. at ¶ 15).

This court concludes that there was a substantial basis for the Magistrate's determination of probable cause.

**D. Nexus**

Defendant argues that the affidavit in support of the search warrant did not

ORDER - 10

establish a sufficient nexus between the explosives and Hankin's truck. "For probable cause, an affidavit must establish a reasonable nexus between the crime or evidence and the location to be searched." *United States v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007). "It need only be reasonable to seek the evidence at the location indicated in the affidavit." *Id*. at 1137. Neither certainty, nor even near certainty is required. *United States v. Espino*, 2014 WL 59750 (9th Cir. 2014) <u>citing</u> *Crews*.

The reasonable basis to believe that blasting caps were in the truck is set forth in the Northcutt Affidavit, particularly at Paragraphs 9-thru-15. Showers told Claassen he thought that Hardcore's "stones" (blasting caps) had just been found. Northcutt knew that Defendant (Hardcore) had just been arrested, his truck had been impounded, and it had not been searched. (Northcutt Aff. ¶ 15). Paragraph 16 of the Affidavit further stated that a bomb detection canine had made a sweep around the vehicle, and although the canine did not alert for explosives, he did show some interest.

**E.  Good Faith Exception**

The United States Supreme Court has recognized an exception to the exclusionary rule where law enforcement has acted in good faith upon a search warrant issued by a neutral Magistrate. In such circumstances, even if a reviewing court finds a lack of probable cause to support the warrant, "suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984). The Court further stated that "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause," and thus great deference is afforded the Magistrate's determination. *Id*. at 914. "In the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination." *Id.* at 921.

A court may make the good faith determination, without making the conclusive determination of whether the affidavit was supported by probable cause. *United States*

*v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007)("Before embarking on the exercise of determining whether the affidavit supported probable cause, we may proceed directly to the issue of whether there was good faith reliance."). The good faith exception may apply if the affidavit establishes "a colorable argument for probable cause." *Id.* If there is such a "colorable argument for probable cause" and the officer's reliance on the warrant is objectively reasonable, "[t]his ends the inquiry without having to belabor the issue of whether the affidavit stated probable cause." *Id.* at 1136; see also *United States v. Burford*, 289 Fed.Appx. 201 (9th Cir. 2008).

This court finds that there were no false statements in the affidavits of Agent Northcutt or Agent Smith that were submitted in support of the application for the federal search warrant. Defendant has not argued, and there has been no showing, that the Magistrate Judge failed to act in a detached and neutral manner. The court further finds, as stated *supra*, that the search warrant issuance was supported by probable cause. However, even if this court had not reached that conclusion, the warrant is supported by at minimum a colorable argument for probable cause such that an officer's reliance upon it was objectively reasonable. The court concludes that the good faith exception would also apply.

### F. Delay in Obtaining Warrant

Defendant's Motion argued that there was unreasonable delay in obtaining the search warrant. Defendant did not advance this argument at the two-day evidentiary hearing and argument. However, the court will address it briefly. The vehicle was impounded on July 20, 2013, and a search warrant obtained, and search executed, on July 31, 2013. The eleven day delay was not unreasonable. See *United States v. Sullivan*, __F.3d__, 2014 WL 2199316 (9th Cir. May 28, 2014)(rejecting defendant's argument that 21-day delay in obtaining search warrant for seized laptop computer was unreasonable). In *Sullivan*, the court noted that defendant was in custody during the 21-day time period: "Where individuals are incarcerated and cannot make use of seized

ORDER - 12

property, their possessory interest in that property is reduced." *Id*. at *6. Similarly, Hankins was in custody when his vehicle was impounded. Hankins does not argue that he or his wife made any attempt to retrieve the vehicle from impound during the 11-day period. The court considers the Government's course of conduct and totality of circumstances concerning the investigation. "Even if the government could have moved faster to obtain a search warrant, the government is not required to pursue the least intrusive course of action." *Id*. at *7.

The warrant was obtained just two-days after the jail house call in which Showers mentioned Hankins, and just 1-day after Agent Smith corroborated some of the information from the calls by talking to Claassen on July 30th. The court finds no unreasonable delay.

### G. Motion for Reconsideration

After the court orally denied the Motion to Suppress on May 19, 2014, and advised counsel that a Memorandum Opinion would be forthcoming, Defendant filed a Motion to Reconsider (ECF No. 49). The Motion to Reconsider was filed before the court had issued its written Opinion. The Motion to Reconsider focuses primarily on the probable cause and nexus determination and the court's finding concerning the testimony of Deputy Marshal Shafer. Defendant argues that there was just one search by Mr. Shafer and his explosive-detecting canine, Zion. Defendant argues that this search occurred prior to the issuance of the warrant, included Zion going into the cab, and was an improper warrantless search.

Defendant's argument ignores critical testimony of Mr. Shafer. The court acknowledged at the time of the hearing that the testimony concerning Zion was "confusing" and "not absolutely clear" (Tr. at p. 142-143). The court indicated to counsel at that time that it appeared Mr. Shafer was not asked about the sweep prior to the warrant, but rather about the search after the warrant was issued. It's clear from Agent Northcutt's affidavit that Zion performed "a sweep around the subject vehicle"

ORDER - 13

2em

prior to the issuance of the warrant. (at ¶ 16).  Marshal Shafer testified to his practice of always reviewing the search warrant prior to a search. (Tr. at p. 131)("Before I do all searches, when there's a search warrant, I read the search warrant.").  He testified that on this occasion when he arrived he read a copy of the search warrant. (Tr. at p. 126). He testified that a sweep takes place after the warrant has been issued[2]. (Tr. at p. 127). He also testified that if there was not a warrant, he would not have his dog enter a vehicle. (Tr. at p. 132).  The court made the finding at the conclusion of the suppression hearing that at the time the dog was in the cab and bed of the truck, the warrant had been issued. (Tr. at 142-43).  That is the finding of the court.

Under the facts of this case, having Zion walk around the outside and sniff the truck prior to the issuance of a warrant is not a "search" within the meaning of the Fourth Amendment. See *United States v. Place*, 462 U.S. 696 , 707 (1983)("the canine sniff is *sui generis*.  We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure."); *Illinois v. Caballes*, 543 U.S. 405 (2005).

For all the reasons set forth in this Memorandum Opinion, the Motion to Reconsider is DENIED.

### IV.  Conclusion

The initial seizure of the truck was proper, because the vehicle was used in the commission of a felony (the unlawful imprisonment/assault of the repossession man on July 9, 2013).  The testimony of Sergeant Vigesaa and Patrol Officer Uberuaga supports the finding that the vehicle was impounded as evidence of the assault on the repossession

---

[2]Part of the confusion may be caused by the interchangeable usage in the testimony and briefing of "sweep" and "search".  The court thinks of "sweep" as outside the vehicle, and not requiring a warrant.  A "search" would require a warrant.  Mr. Shafer testified that he was going to do a "sweep" of a vehicle that they had a search warrant for.

ORDER - 14

man and for evidence of possible stolen property.  The court further concludes that probable cause supported the issuance of the July 31, 2013 federal search warrant.  Some deference is owed to the Magistrate's determination, and the evidence viewed as a whole provided a substantial basis for the Magistrate's finding of probable cause.  The court would additionally deny the Motion to Suppress based on the good faith exception of *United States v. Leon*, 468 U.S. 897, 926 (1984), in that the warrant was clearly supported by at minimum a colorable argument for probable cause and the Agents reliance thereon was objectively reasonable

**IT IS HEREBY ORDERED**:

1.  For all the aforesaid reasons, the Motion to Suppress (ECF No. 32) is **DENIED**.

2.  The Motion to Reconsider (ECF No. 49) is **DENIED**.

3.  The final Pretrial Conference remains set for **June 19, 2014**, and jury trial remains set for **June 30, 2014.**

**IT IS SO ORDERED**.  The Clerk shall enter this Order and furnish copies to counsel.

Dated this 8th  day of June, 2014.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 15